**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**HEARTLAND CONSUMER**
**PRODUCTS LLC et al.,**

**Plaintiffs,**

**v.**                                                    **Civil Action 2:21-cv-1262**
                                                         **Judge Michael H. Watson**
                                                         **Magistrate Judge Jolson**

**SHEETZ, INC. et al.,**

**Defendants.**

## OPINION AND ORDER

This matter is before the Court on the parties' Joint Status Report. (Doc. 56). The parties

seek to resolve a discovery dispute regarding requests for production and interrogatories served by

Defendant Sheetz, Inc. ("Sheetz"). (*Id.* at 1). Identical requests were made by Defendant A.C.

Dispensing Equipment, Inc. dba SureShot Solutions ("SureShot"). (*Id.*). The Court **ORDERS** the

parties to confer, but to narrow the scope of the dispute, the Court makes determinations with

which the parties are **ORDERED** to comply. A status report is due on **February 18, 2022**.

## I.     BACKGROUND

Plaintiffs Heartland Consumer Products LLC and TC Heartland LLC (together "Heartland"

or "Plaintiffs") filed this trademark infringement case against Defendants Sheetz and SureShot

(together "Defendants") on March 24, 2021. (Doc. 1). Sheetz previously made Heartland's

artificial sweetener, SPLENDA®, available to purchasers of coffee, tea, and other beverages at

Sheetz convenience stores through SureShot equipment. (Doc. 56). Heartland alleges that

SureShot manufactured and supplied infringing self-dispensing sweetener machines. (Doc. 1 at ¶

5). Further, Heartland alleges that despite no longer offering American-made SPLENDA, instead

offering cheaper sweeteners manufactured in China, Sheetz continues to use the SPLENDA name

and logo, misleading consumers.  (*Id.* at ¶ 2–5).  Thus, Heartland claims that "Defendants have both willfully and intentionally infringed Heartland's intellectual property, while compromising the trust of consumers in Heartland's reputation and goodwill."  (*Id.* at ¶ 5).

The parties, currently engaged in discovery, dispute the extent to which Heartland must comply with Defendants' requests for production and interrogatories.  (Docs. 49, 56).  The parties have submitted a status report stating their respective positions.  (Doc. 56).  Portions of the dispute are straight-forward.  Those disputes are resolved below.  For the remaining disputes, the parties must attempt to resolve the issues using the guidance provided in this Opinion and Order.  A status report explaining their conferral efforts is due on February 18, 2022.

## II.    STANDARD

While no motion to compel has been filed, the rules that govern such a motion provide guidance on resolving this discovery dispute.  Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Rule 37 permits a discovering party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to respond to the requests.  Fed. R. Civ. P. 37(a).  And it allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34.  *See* Fed. R. Civ. P. 37(a)(1), (3).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."  *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted).  "Relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of

consequence in determining the action." Fed. R. Evid. 401. "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III.    DISCUSSION

The parties have raised ten issues regarding Defendants' requests for production and interrogatory responses. The Court addresses each in turn.

### A.    Enforcement and Policing Documents and Information

Defendants request documents and information related to Heartland's enforcement and policing of its SPLENDA mark and Yellow mark. They argue this information is relevant because it will show whether Heartland adequately enforced and policed the marks. (Doc. 56 at 2). Heartland responds that the scope of the request is unwarranted, disproportional, overly burdensome, and not relevant. (*Id.* at 3). The Court agrees with Heartland in part, and limits discovery accordingly.

#### 1.  Temporal Limitation

Defendants seek responsive documents dating back to 1990. (*Id.* at 2). Heartland argues that such a long timeframe is unwarranted for two reasons. First, Heartland says that the doctrine of licensee estoppel, which prohibits a licensee from challenging the validity of a mark while enjoying the use of that licensed property, limits discovery to the time period after Heartland's contract with Defendants ended in 2019. (*Id.* at 5). In response, Defendants challenge not only

the application of the doctrine of licensee estoppel but even the existence of a contract among the parties. (*Id.* at 3). This merits question is better determined later in the case, not at this early stage of discovery. *Tutor Time Learning Centers, LLC v. KOG Indus., Inc.*, No. 12CV04129NGGRER, 2013 WL 12363550, at *2 (E.D.N.Y. Apr. 5, 2013) (finding that Plaintiff's licensee estoppel argument is better addressed in a dispositive motion ruling or trial); *cf. Westco Grp., Inc. v. K.B. & Assocs., Inc.*, 128 F. Supp. 2d 1082, 1090 (N.D. Ohio 2001) (deciding a licensee estoppel argument at summary judgment); *L.F.P.IP., Inc. v. Hustler Cincinnati, Inc.*, No. 1:09CV0913 WOB, 2011 WL 5024356, at *9 (S.D. Ohio Oct. 20, 2011), *aff'd*, 533 F. App'x 615 (6th Cir. 2013) (same). Consequently, the Court will not limit discovery based upon the doctrine of licensee estoppel at this juncture.

Next, Heartland argues that its production of materials dated January 1, 2016 and onward is sufficient because the alleged infringing activity took place after 2019. So, Heartland says, nothing pre-dating 2019 matters. (Doc. 56 at 4). Still, Defendants insist that all efforts to protect the mark are relevant. (*Id.* at 2).

Both sides are overlooking an important fact. Heartland represents that it acquired SPLENDA in 2015. (*Id.* at 4). Even Defendants acknowledge that Heartland is unlikely to have responsive documents pre-acquisition, stating that "Heartland acquired the business in 2015 and advises that it has no control over the documents of its predecessor-in-interest, so it is unclear whether Heartland even has any significant volume of responsive documents predating 2015." (*Id.* at 2). Thus, the Court finds that the relevant timeframe begins on the acquisition date. Accordingly, Heartland is **ORDERED** to produce responsive documents dating back to the date SPLENDA was acquired by Heartland. If, during discovery, Defendants uncover a reason to believe that relevant documents are in Heartland's possession that pre-date the acquisition,

Defendants may pursue those documents through an informal discovery conference with the Undersigned.

### 2. *Scope of Documents*

Defendants seek the full chain of correspondence related to Heartland's attempts to police its marks in order to assess whether and to what extent Heartland failed to protect its marks. (*Id.*). Heartland counters that it is required to produce only an originating document and a closing document from any enforcement or policing action. (*Id.* at 4). Heartland also says, among other things, that responding would be too burdensome. (*Id.*). The Court agrees that, as written, the request is too broad and presents an undue burden. Heartland has produced originating and closing documents. Defendants may use those documents to propound more narrowly tailored document requests. Further, through deposition testimony, Defendants may explore Heartland's attempts to police its mark. Accordingly, Defendants' request for the full chain of correspondence is **DENIED**.

### 3. *Food Service Market*

The parties dispute whether responsive documents outside the food service market must be produced. Defendants argue that their "affirmative defenses of functionality and genericness require analysis of how consumers of Heartland's products sold under the Alleged Yellow Mark see and perceive the Alleged Yellow Mark and competitors' use of yellow in all contexts in which the purported mark is displayed" in the food service market and others, such as retail markets like grocery stores. (*Id.* at 3). Heartland argues limitation to the food service market is appropriate because their allegations concern Defendants' use of the marks only in Sheetz stores, which are in the food service market. (*Id.* at 5). Heartland says that documents beyond that are too far afield and production would be unreasonable, unduly burdensome, and disproportional to the needs of the case. (*Id.* at 5–6).

The Court finds Defendants' request, as written, to be overly broad. Still, some information beyond the food service market might be relevant to Defendants' affirmative defenses. The Court cannot make that determination based upon the limited briefing. Given the impact of this dispute on the scope of discovery and the need for Defendants to develop the relevance of this request, the issue should be resolved, or at least narrowed, through consultation. Accordingly, pursuant to S.D. Ohio Civ. R. 37.1, the parties are **ORDERED** to confer and exhaust among themselves all extrajudicial means for resolving their differences relating to this dispute.

### 4. Interrogatory No. 2

The parties are **ORDERED** to follow the foregoing determinations and the forthcoming mutual resolution regarding the scope of discovery when responding to Interrogatory No. 2.

## B. Documents Concerning Sweeteners Manufactured in China

Defendants request all documents concerning sweeteners manufactured in China. (*Id.* at 6). Heartland responds that this request is irrelevant and responding would be too burdensome. (*Id.* at 6–7). Defendants do not articulate why this request is relevant or how the information sought here is different than what is obtained through the enforcement and policing documents. (*Id.*). Heartland already has agreed to provide the information it relied upon to make the allegation that Defendants provide lesser-quality Chinese-manufactured sucralose products and documents related to testing of Chinese-sourced product dating back to January 1, 2016.

The Court finds that Heartland's allegation that Sheetz sells Chinese-manufactured sucralose should not open the gates to every document concerning Chinese sweeteners. That request is overly broad and not closely tied to the claims or defenses here. Still, Heartland must comply with the previous temporal limitation. Thus, in addition to what it already agreed to produce, Heartland is **ORDERED** to produce documents relating to the testing of Chinese-sourced product dating back to its acquisition of SPLENDA. Again, Defendants may renew the pursuit of

pre-acquisition documents if they discover or have reason to believe that there are relevant pre-acquisition documents.

### C. "Color-Coding" and Use of Yellow Documents

Defendants request all documents concerning color-coding in the sweetener industry and concerning the use of the color yellow on or in connection with sucralose or other sweeteners. (Doc. 56 at 7, 9). Defendants seek all documents concerning color-coding in the sweetener industry regardless of if "color-coding" appears in the document. (*Id.* at 7). They also seek documents concerning the use of the color yellow on or in connection with sucralose or other sweeteners, including the packaging or dispensing thereof. (*Id.* at 9). Defendants do not explain the relevance of these requests.

In response, Heartland raises the same arguments and proposes the same limitations as before: licensee estoppel, ordinary course of business, and food service market. Further, Heartland argues that conducting a search for responsive documents without terms or parameters would be unreasonable, unduly burdensome, and disproportional. (*Id.* at 7–8).

The Court agrees that Defendants' request is too broad and relevancy is not immediately apparent. Yet, if refined, this discovery may be appropriate. Given the impact of this dispute on the scope of discovery, the need for Defendants to develop the relevance of this request, and the need for agreed search-terms, this issue should be resolved through consultation. Accordingly, pursuant to S.D. Ohio Civ. R. 37.1, the parties are **ORDERED** to confer and exhaust among themselves all extrajudicial means for resolving their differences relating to this dispute.

Additionally, consistent with this Order, the temporal scope of the search should be from the date Heartland acquired SPLENDA; any limitations based on licensee estoppel are inapplicable; and the parties are **ORDERED** to confer regarding the food service market limitation.

7

###### D.     McNeil Litigation Documents

Defendants seek documents from the *McNeil v. Heartland* case (civil action no. 06–5336, E.D. Pa.).  They want Heartland to produce entire documents, where Heartland only produced a single page, and they want other documents that Heartland has failed to produce entirely.  (*Id.* at 9).  Heartland counters that it has produced all non-privileged documents from the *McNeil* litigation within its possession, custody, and control that are not otherwise available to the public.  Beyond that, Heartland says it is not obligated to produce documents that are publicly available.  (*Id.*).

Generally, the Sixth Circuit has stated that "[t]he rules of discovery ... do not permit parties to withhold material simply because the opponent could discover it on his or her own."  *Tdata Inc. v. Aircraft Tech. Publishers*, No. 2:03-CV-264, 2007 WL 433295, at *2 (S.D. Ohio Feb. 5, 2007) (quoting *Abrahamsen v. Trans–State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996)) (alterations in original).  However, there is support for Heartland's position that there is no discovery obligation to produce documents in the public record that are equally available to both parties.  *See id.*; *Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 796–97 (E.D. Tenn. 2016), *aff'd*, 899 F.3d 428 (6th Cir. 2018); *Hobson v. Mattis*, No. 3:14-CV-01540, 2017 WL 11475404, at *7 (M.D. Tenn. Sept. 11, 2017).  Additionally, courts have found that a failure to disclose public records in discovery has been found to have minimal impact on the opposing party.  *Hobson*, 2017 WL 11475404, at *7–8 (citing *Ford v. Hamilton Cnty. Juvenile Court*, No. 1:05–CV–557, 2007 WL 2302816, at *8 n.6 (S.D. Ohio Aug. 8, 2007)).

Here, Heartland has already agreed to produce non-privileged *McNeil* litigation documents that are not available to the public.  Because Defendants have equal access to the publicly available documents, Heartland is not required to produce them, and Defendants' request is **DENIED**.  If

Defendants, for whatever reason, are unable to secure documents from the public domain, they are **DIRECTED** to confer with Heartland to resolve the matter extrajudicially.

### E.    Business and Marketing Plans

Defendants request production of Heartland's business plans and marketing plans relating to the use of the SPLENDA Mark and the Alleged Yellow Mark in the United States dating back to 1990.  (*Id.* at 10).  This is relevant, they say, because the plans relate to uses of the alleged marks and will show how Heartland planned to address the rising problems of third-party use, color coding, etc.  (*Id.*).  Heartland opposes, stating that the term "business plans" is too broad, the request is not relevant because the parties are not competitors, thirty years of production is disproportional, and Heartland already has produced responsive documents; specifically, Heartland has produced policing and "color coding" documents.

The Court agrees with Heartland that the request is overly broad, especially given Defendants' acknowledgment that Heartland is not likely to have responsive documents pre-acquisition (*id.* at 11).  Further, it seems that Defendants are receiving the relevant policing and "color coding" documents.  Requiring anything more would not be proportional to the needs of the case.  Thus, Defendants' request is **DENIED**.

### F.    "Made in America" Documents and Information

Defendants request documents relating to Heartland's claim that SPLENDA-branded sweetener is "wholly made in America."  (*Id.* at 11).  This discovery is relevant to Defendants' unclean hands defense.  Heartland resists, seeking to limit discovery to a time frame starting January 1, 2016, the food service market, and products that are in suit.  (*Id.* at 11–12).

Consistent with the previous temporal scope limitation, the proper scope is from the date SPLENDA was acquired.  Regarding food service market and the products in suit limitation, the parties are **ORDERED** to confer.

### G. Documents Regarding Market Share and Value of Mark; Revenue and Profit Documents and Information

Defendants request documents concerning SPLENDA's market share, value of mark, annual revenue, and annual expenses dating back to 1990. (Doc. 56 at 12, 13). Defendants seek this information to assess damages. (*Id.*). Heartland argues that responsive documents dating back to 2017 are sufficient. (*Id.*). They claim that Defendants are entitled only to documents dating back to 2019 under the licensee estoppel doctrine, and that the request is unreasonable, unduly burdensome, and irrelevant. The Court finds that over thirty years of data to assess damages is disproportional to the needs of the case. *Cf. In re E.I. du Pont de Nemours & Co.*, No. 2:13-MD-2433, 2014 WL 1653158, at *6 (S.D. Ohio Apr. 24, 2014) ("[M]ost courts addressing the proper scope of financial discovery have limited such discovery to the period providing a picture of the defendant's current financial condition and net worth, usually the most recent year or two.") (discussing the permissible scope of discovery regarding putative damages).

Consistent with this order, production dating back to Heartland's 2015 acquisition of SPLENDA is proportional to the needs of this case. Accordingly, Heartland is **ORDERED** to produce responsive documents dating back to its acquisition of SPLENDA.

### H. Communication Identifying Person Who First Brought the Alleged Infringement to Heartland's Attention

Defendants ask how Heartland first became aware of the alleged infringing conduct, specifically requesting information identifying the person who first became aware. (Doc. 56 at 13). Heartland states they have produced documents identifying the person who first brought the alleged infringement to Heartland's attention and supplemented its Interrogatory responses to reflect those documents. (*Id.* (citing HEARTLAND_0014527-29, HEARTLAND_0014540-43, HEARTLAND_0014527-29)). Heartland considers this issue moot. Neither party has given the Court their cited Bates numbered documents to enable the Court to review. Furthermore, the Court

10

considers this a simple issue appropriate for resolution through consultation.  Accordingly, pursuant to S.D. Ohio Civ. R. 37.1, the parties are **ORDERED** to confer and exhaust among themselves all extrajudicial means for resolving their differences relating to this dispute.

## IV.  CONCLUSION

The parties are **ORDERED** to comply with the scope limitations laid out in this Order. Regarding the unresolved disputes, the parties are **ORDERED** to confer.  A status report on the outstanding issues is due on **February 18, 2022**.


IT IS SO ORDERED.


Date:  February 4, 2022                          /s/ Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE