**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| HEARTLAND CONSUMER PRODUCTS LLC and TC HEARTLAND LLC, <br><br>*Plaintiffs*, <br><br>v. <br><br>SHEETZ, INC. and A.C. DISPENSING EQUIPMENT, INC. DBA SURESHOT SOLUTIONS, <br><br>*Defendant.* | Case No: 2:21-cv-01262-MHW-KAJ <br><br> Judge Michael H. Watson <br><br> Magistrate Kimberly A. Jolson |

**JOINT STATUS REPORT**

Pursuant to this Court's February 4, 2022 Opinion and Order (ECF No. 58), Plaintiffs Heartland Consumer Products LLC and TC Heartland LLC (together, "Plaintiffs" or "Heartland") and Defendants Sheetz, Inc. ("Sheetz") and A.C. Dispensing Equipment, Inc. dba SureShot Solutions ("SureShot") (together, "Defendants") submit this joint status report regarding alleged deficiencies in Plaintiffs' discovery responses.

**Defendants' Position**

Following the entry of the Court's Opinion and Order, the parties met and conferred twice and have also exchanged lengthy correspondence in attempts to resolve their differences related to the disputes discussed in the Opinion and Order. The parties have now exhausted all extrajudicial means for resolving those differences. Under S.D. Ohio Civ. R. 37.1, Defendants respectfully seek an informal telephone conference with the Court in lieu of immediately filing a motion to compel, to address whether motion practice is warranted with regard to whether Plaintiffs should be compelled to produce:

1

1. The following documents, which Plaintiffs have withheld based on the food service market limitation.

    a. Documents showing, explaining or underlying market research results relating to consumer perceptions of the color yellow or generic sucralose, regardless of which "market" is involved;

    b. Documents showing or explaining consumer survey results relating to consumer perceptions of the color yellow or generic sucralose, regardless of which "market" is involved;

    c. "Color-coding" documents outside of the food service market;

    d. "Made in America" documents and information requested for products outside of the food service market, for any Splenda-named product sold in the U.S.; and

    e. Any additional enforcement/policing documents of the types that Plaintiffs have already produced or agreed to produce for alleged infringers within the food service market, *e.g.* originating documents; closing documents including both settlement agreements and supply agreements; and the first "substantive" written demand to the alleged infringer and the response to that demand.

2. The 2005 First Amended and Restated Trademark License Agreement to which HEARTLAND_0019150, HEARTLAND_0019152, and HEARTLAND_0019168 are amendments.

3. Court filings, hearing and trial transcripts, and deposition transcripts from the *McNeil v. Heartland* litigation which are not available on the public docket and Plaintiffs have not previously produced in full, unredacted form.

4. For each supply agreement, trademark agreement, and settlement agreement produced by Plaintiffs, documents or information sufficient to show:

    a. Whether the company being supplied or licensed has renewed the agreement and if so, when and under what terms;

    b. Whether the agreement is still in force; and

    c. The substance, timing and outcome (or status, if the dispute is pending) of any dispute regarding compliance with the agreement;

5. Response to Sheetz Interrogatory No. 3, which relates to Plaintiffs' discovery of Defendants' alleged infringement.

6. Documents relating to color-coding or "yellow" authored or received by Plaintiffs' personnel involved with market research.

       7.    Documents relating to "yellow" sent or received by the four unidentified executives whose files Plaintiffs have searched for color-coding documents.

Defendants further ask that Plaintiffs produce by February 28 the documents which it has already agreed to produce and the documents which the Court ordered it to produce in its Opinion and Order.

Defendants respectfully but strongly disagree with Plaintiffs' characterization of the meet-and-confer process and with Plaintiffs' specific responses to the requests on which the parties remain at impasse.

Defendants acknowledge sending their latest set of proposed narrowings later than intended, due to unforeseen and unavoidable scheduling conflicts in other matters. Defendants have apologized to Plaintiffs for the delay in responding to Plaintiffs' February 15 letter. Upon learning from Plaintiffs this afternoon that they would like additional time to investigate, consider and/or negotiate some of Defendants' proposals, Defendants offered to postpone the final joint status report for a week while the parties continue to work together before asking the Court to intervene. As part of this proposal, Defendants suggested converting today's filing to a simple short form listing the issues which remain in dispute, without advocacy. Plaintiffs declined the proposal and demanded that we instead move forward with the final report today. However, Defendants intend to continue to work with Plaintiffs to attempt to narrow our areas of dispute.

Defendants will be fully prepared to address at the requested informal telephone conference each of the assertions Plaintiffs make below. The discovery Defendants seek to obtain is important to their defense. Defendants are prepared to brief these issues in a motion to compel should they not be resolved by agreement before or during the telephone conference.

**Plaintiffs' Position**

Heartland is compelled to state that the meet and confer process has not been as described by Defendants. This Court's February 4th Order was clear – in most instances Defendants' discovery requests were overly broad, not relevant and unduly burdensome. On select topics, the Court ordered Defendants to "narrow" their requests and instructed Heartland to respond to those narrowed topics. The Defendants have completely ignored this guidance from the Court and has simply continued to try to enforce the same requests that the Court has already informed are too broad.

On February 8th, Defendants served a letter addressed solely to the issue of enforcement-related documents, whereby Defendants claim to provide "narrowed" requests (attached as Exhibit A). In many ways, this letter failed in that mission, seeking documents that either were inconsistent with the Court's February 4th order limiting discovery (i.e., pre-acquisition documents, full "chain of communication" documents, etc.), or otherwise expanded (as opposed to narrowed) the scope of documents they sought from Heartland.

Heartland responded quickly, and on February 9th wrote counsel for Defendants with a response identifying the continued overbreadth of the requests, as well as where the requests were

3

inconsistent with the Court's discovery order (attached as Exhibit B). This led to a conference on February 10th whereby the parties discussed the issues raised in Defendants' February 8th letter concerning enforcement issues.

It is important for the Court to understand that most of what is identified in this status report by Defendants as "remaining in dispute" was never identified during the course of the meet and confer process. The bulk of these issues were first identified in a letter delivered to counsel for Heartland at 11:59 pm on Thursday, February 17th – literally one minute before the day this joint status report was due. (attached as Exhibit D) In fact, the first draft of this Joint Status Report was never delivered to Heartland's counsel until 9:04 a.m. this morning. Heartland attaches herewith both the original February 8th letter from counsel and her letter from last night (the only communications from Defendants in this process) to illustrate the vast difference from where we started to where we are now. This entire process has been one of moving targets. This is the issue that led to the earlier conference with the Court. It appears that no matter what concession or compromise Heartland attempts to reach with Defendants, it is never sufficient and all targets become moving targets. This is why Heartland requested that Defendants actually restate their requests in writing and why the Court so ordered. Defendants simply keep wading in the vagueness and overbreadth of their original requests and letters.

Heartland has tried to impress upon Defendants that the focused issues in the case involve Defendants' misuse of the SPLENDA® brand and trademark during certain times from 2019 to 2021 and Defendants' conduct in misleading consumers in how it uses the color yellow from 2021 to present. The entire history, complexion and transactional status of the SPLENDA® brand is not at issue despite Defendants' dogged, and expensive, insistence to the contrary.

By way of example, as the Court is aware, Heartland has always committed to producing the "originating" and "closing" documents for the alleged infringers that were identified in its discovery responses. In fact, most of those documents had been produced well prior to Defendants' contact with the Court that led to the February 4th Order. This Court agreed with Heartland that Defendants' request for all of the communications in between these documents was unnecessary and overly broad. During the meet and confer process after February 4th, Defendants' counsel continued to press the point that they were entitled to the full chain of communications, and requested "every" substantive communication concerning legal positions stated in the course of those matters, every draft of a settlement agreement, and every draft of any related documents, including drafts of commercial supply agreements. It is difficult to interpret this as anything other than conscious disregard of the Court's guidance. Heartland understandably refused Defendants' demands to provide the newly expanded list, but did offer additional documents such as the following:

- A settlement agreement concerning a Puerto Rican entity over a supply agreement dispute, once/if Plaintiffs clear a confidentiality issue with the other party.
- The first "substantive" demand or statement by Heartland to any alleged infringer, unless the document is otherwise publicly available (like a pleading).
- The first "substantive" response by any alleged infringer to any formal demand, unless it was a publicly available document (like an Answer as a responsive pleading).

4

- Any consumer surveys disclosed to an alleged infringer in the course of litigation or dispute resolution.
- Consumer surveys relating to the issue of the color-yellow as having secondary meaning to the SPLENDA® brand performed in the ordinary course of business, if any, dating back to acquisition.

(Exhibit C, February 15th letter from Heartland).[1] This is a relatively small set of documents, but Heartland considered this to be a reasonable set of additional documents that were consistent with the Court's February 4th Order.

Unsatisfied, as evidenced in Defendants' letter from last evening, Defendants now seek an even broader set of documents than originally requested in their February 8th letter or otherwise requested during the February 10th meet and confer. At no time during the meet and confer process was there ever any discussion of the production of infringements outside the food service market. This is an entirely new issue raised at 11:59 pm last night.

Heartland acknowledges that the issue of "food service versus other markets" was identified by the Court as one that the parties should meet and confer about, but the Court's order was clear that it was Defendants' burden to narrow the scope of the requested documents. Defendants have thus far refused to provide that narrowing, instead simply restating their "need" for documents outside the food service space. As confirmed in Heartland's February 9th letter, Defendants did not come to the meet and confer "prepared with narrowed requests, nor were any such narrowed requests identified in your letter dated February 8th." In fact, during the meet and confer on February 10th, Plaintiffs' counsel asked for narrowed requests, or some narrowed scope, and counsel for Defendants responded "I don't really know what that would be." In other words, there was no effort at all to offer narrowed requests.

The same issue arose in regard to the issue of so-called "color-coding" documents. This Court's February 4th Order found Defendants' requests overly broad, and directed the parties to meet and confer after these requests were "narrowed." No such narrowing was offered during the parties' meet and confers. This too was confirmed in Heartland's letter dated February 15th.

In short, Heartland wholly disagrees that Defendants have complied with the Court's instructions on narrowing of requests, and that the meet and confer process has been satisfied. For the sake of completeness, and since these 7 topics identified by Defendants in this Joint Status Report are now before the Court, Heartland is compelled to address each one (albeit briefly).

---

[1] The Court's February 4th Order did not direct Heartland to respond to "narrowed" informal requests. Instead, the Court instructed Defendants to "propound more narrowly tailored document requests." Defendants did not do so, and instead simply sent its February 8th letter. Heartland did not make an issue of that, but it should remain clear that the original requests for production that the Court found overly broad and not relevant remain the only operative Rule 34 discovery requests.

5

1. The following documents, which Plaintiffs have withheld based on the food service market limitation.

    a. Documents showing, explaining or underlying market research results relating to consumer perceptions of the color yellow or generic sucralose, regardless of which "market" is involved;

    **RESPONSE:** This is an entirely new request and was never the subject of any of the post-February 4th meet and confers or Defendants' letters. Heartland has not had sufficient time to determine the scope of this request or the burden in identifying and/or collecting the responsive documents. It is unlikely that these documents are relevant to this proceeding. This proceeding involves whether the color yellow, in the food service environment and on a dispenser found at Defendants' premises for use in connection with self-service hot beverage service, has secondary meaning to patrons of Defendants' business. It is difficult to understand how consumer impressions in an entirely different context would be relevant to the issues in this case. In connection with the issue of food service as a limitation generally, which was the subject of the parties' meet and confer, Defendants were asked to explain the relevancy of non-food service documents. Defendants simply restated a "need" for the documents "to understand the market differences." Need is not a proxy for relevance, and no explanation has ever been provided, nor has any case law been provided demonstrating the relevancy of these documents. This Court's February 4th Order expressly noted the "need for Defendants to develop the relevance of this request, and the need for agreed search-terms", neither of which has been provided to Plaintiffs, despite Heartland's request for that information during the meet and confer process.

    b. Documents showing or explaining consumer survey results relating to consumer perceptions of the color yellow or generic sucralose, regardless of which "market" is involved;

    **Response:** Same response as with 1(a), and notably was never a part of the meet and confer process. However, as noted above, in the food service market, Heartland has committed to producing any non-privileged consumer surveys relating to the issue of the color-yellow as having secondary meaning to the SPLENDA® brand performed in the ordinary course of business, if any, dating back to acquisition.

    c. "Color-coding" documents outside of the food service market;

    **Response:** This issue was never raised during the meet and confer process, beyond just a discussion of the "food service market limitation" generally in the meet and confer on February 10th. Notably, this issue was never identified in Defendants' February 8th initial letter. None of this led to any narrowing either, and instead was Defendants' counsel simply stating that the non-food service market is "relevant" with no further explanation or more specific request. As to "color-coding" generally, before February 4th, a search was performed using

        keywords for those documents and no documents were identified through that process. Defendants know this because they have been told no responsive documents exist on several occasions. Reference is also made to Plaintiffs' February 15th letter on color-coding generally. Again, this Court's February 4th Order placed the burden on Defendants to explain relevancy, but during the meet and confer process refused to do so, or in any way narrow the requests in any way at all.

    d.    "Made in America" documents and information requested for products outside of the food service market, for any Splenda-named product sold in the U.S.; and

        **Response:** This issue was never raised during the meet and confer process. As a result, Defendants have never explained the relevance of documents on products that are not in suit or made in the United States. This Court ordered the parties to confer on "food service market and the products in suit limitation." Heartland was prepared to do so through this process, but Defendants never raised the issue (see Defendants' February 8th letter). At this stage, nothing has changed since the submission of the Joint Status Report (Doc. 56), other than the production of additional documents evidencing that Heartland's SPLENDA® brand sweetener is manufactured in America.

    e.    Any additional enforcement/policing documents of the types that Plaintiffs have already produced or agreed to produce for alleged infringers within the food service market, *e.g.* originating documents; closing documents including both settlement agreements and supply agreements; and the first "substantive" written demand to the alleged infringer and the response to that demand.

        **Response:** It is unclear why this would be identified as a disputed issue, since these documents have already been produced or identified for production by the end of the month, and that fact has already been confirmed to Defendants.

2.    The 2005 First Amended and Restated Trademark License Agreement to which HEARTLAND_0019150, HEARTLAND_0019152, and HEARTLAND_0019168 are amendments.

        **Response:** This was never identified at any time in any prior meet and confer, going back to the original round that led to the February 4th Order. This document is pre-acquisition by ten years. This document was first raised by Defendants at 11:59 pm last night. Regardless, Heartland has committed to searching for this document to determine if it even exists. If it does, then it will be reviewed for relevancy and Heartland will confer with Defendants on whether it should be produced.

3.    Court filings, hearing and trial transcripts, and deposition transcripts from the *McNeil v. Heartland* litigation which are not available on the public docket and Plaintiffs have not previously produced in full, unredacted form.

> **Response:** This issue was never identified in the February 8th letter and was never raised in the meet and confer process. Plaintiffs have been steadfast since last year that if documents that are not available on the public docket and are in Plaintiffs' possession, custody or control, they will be produced. The Court's February 4th Order acknowledged Heartland's position. Heartland has also confirmed that after a reasonable search, those documents have been produced. It remains then unclear what remains in "dispute." It should also be noted that the Court ordered Defendants to identify any documents that, while publicly available, "for whatever reason [Defendants] are unable to secure documents from the public domain", and to confer with Heartland to determine whether Heartland possesses those documents. Defendants have identified no such documents, nor has it made any such request of Heartland.

4. For each supply agreement, trademark agreement, and settlement agreement produced by Plaintiffs, documents or information sufficient to show:

    a. Whether the company being supplied or licensed has renewed the agreement and if so, when and under what terms;

    b. Whether the agreement is still in force; and

    c. The substance, timing and outcome (or status, if the dispute is pending) of any dispute regarding compliance with the agreement;

    > **Response:** These documents have never been identified by Defendants at any meet and confer. Had they been, Heartland would have requested Defendants to explain their relevancy. It is unclear why supply agreements that contain purely commercial terms would be relevant to this proceeding. It appears from Defendants' letter last night that these documents inform Heartland's "enforcement/policing". Defendants should explain to the Court how commercial supply agreements relate to "enforcement/policing." Importantly, this issue as framed by Defendants is not limited in time to post-acquisition by Heartland, and as such fails to comply with the Court's February 4th Order.

5. Response to Sheetz Interrogatory No. 3, which relates to Plaintiffs' discovery of Defendants' alleged infringement.

    > **Response:** Plaintiffs do not understand why this is an issue. Documents sufficient to identify the identity of the person that first brought Defendants' unauthorized and counterfeit use of Plaintiffs' SPLENDA brand were identified specifically pursuant to FRCP 33(d) in Heartland's First Supplemental Responses to Sheetz's First Set of Interrogatories. This supplemental response was served on Defendants on January 7, 2022, prior to this Court's February 4th Order. The underlying documents were produced on December 15th. It appears that there were oral communications involving this individual and Heartland, and perhaps that is where the disconnect is. Although Interrogatory No. 3 does not necessarily speak to the issue of detailing all oral communications (since that would

8

          ordinarily be the subject of deposition), Heartland will further supplement its interrogatory response with information concerning those oral conversations.

6. Documents relating to color-coding or "yellow" authored or received by Plaintiffs' personnel involved with market research.

    **Response:** This issue was never raised in Defendants' February 8th letter, nor was it discussed in connection with the February 10th meet and confer. As confirmed in Heartland's February 15th letter, Defendants provided no narrowing of its requests concerning documents that relate to alleged "color-coding." At no time was there ever a discussion for all documents relating to the word "yellow" within Heartland's marketing department. This issue was raised for the first time by Defendants at 11:59 p.m. last night. Accordingly, Heartland has not had sufficient time to determine how many persons are "personnel involved with market research", and whether that phrase is overly vague in and to itself. Similarly, it is likely that a blanket search for the word "yellow" across the Heartland marketing team emails and other documents will result in a very large production, resulting in undue burden on Heartland to review documents that likely bear no relevance to the issues in dispute. This is not a narrowed request. It is simply a restatement of the very same request rejected by the Court on February 4th. ("The Court agrees that Defendants' request is too broad and relevancy is not immediately apparent.") Heartland acknowledges that the Court advised that "refined" discovery requests may be appropriate, but no such refinement has been attempted by Defendants.

7. Documents relating to "yellow" sent or received by the four unidentified executives whose files Plaintiffs have searched for color-coding documents.

    **Response:** Same as (9) above. This is entirely new and never addressed in the meet and confer process, nor in any correspondence from Defendants other than its letter delivered at 11:59 pm last night. Had it been raised, Heartland would have asked for further narrowing. As confirmed on multiple occasions, Heartland searched for electronic documents relating to alleged "color-coding" in the food service market for those four executives. No responsive documents were identified. Now it appears that Plaintiffs require a search for any document containing the word "yellow." On its face, that request is overly broad and would likely also result in an unduly burdensome and disproportionate review of documents that are not relevant to this case. And as with (9), this request does not reflect any sort of "refinement" that responds to the Court's concerns over relevancy and burden.

Finally, as to Defendants' request to post-pone the filing of this report, Heartland respectfully disagreed for two reasons. For one, Heartland believed it important for the parties to comply with this Court's instruction to file this report on this date. For another, and perhaps more importantly, Heartland believes it material that despite having two weeks to identify the scope of

what Defendants are seeking, Defendants provided an entirely new list of documents at midnight the day before this report was due. This is not good faith and it is Heartland's intent by this submission to bring this history to the Court's attention.

Heartland of course will continue to work through these issues, even those newly raised last night, with Defendants.   Although Defendants characterize this as a "final" report, Heartland disagrees that it is "final" and is instead simply responsive to this Court's direction that a report be filed today.  Heartland recognizes that the Court is likely to request an additional submission in the future.

Respectfully submitted,

| | |
|---|---|
| */s/ Jonathan G. Polak* | */s/ Judah Bellin* |
| Jonathan G. Polak (*admitted pro hac vice*) | Diane Siegel Danoff (*admitted pro hac vice*) |
| TAFT STETTINIUS & HOLLISTER LLP | Judah Bellin *(admitted pro hac vice)* |
| One Indiana Square, Suite 3500 | DECHERT LLP |
| Indianapolis, IN 46204 | 2929 Arch Street |
| Telephone:     (317) 713-3500 | Philadelphia, PA 19103 |
| Facsimile:      (317) 713-3699 | Tel:     (215) 994-2179 |
| E-mail:  jpolak@taftlaw.com | Fax:     (215) 655-2179 |
| | Email:  diane.danoff@dechert.com |
| | judah.bellin@dechert.com |
| Rachel A. Smoot (0092296) | |
| TAFT STETTINIUS & HOLLISTER LLP | James A. King (0040270) |
| 65 East State Street, Suite 1000 | PORTER, WRIGHT, MORRIS & ARTHUR LLP |
| Columbus, OH 43215 | 41 South High Street |
| Tel:     (614) 221-2838 | Columbus, OH  43215-6194 |
| Fax:     (614) 221-2007 | Tel:     (614) 227-2051 |
| Email:  rsmoot@taftlaw.com | Fax:     (614) 227-2100 |
| | Email: jking@porterwright.com |
| *Attorneys for Plaintiffs* | Jennifer Insley-Pruitt *(admitted pro hac vice)* |
| | DECHERT LLP |
| | Three Bryant Park |
| | 1095 Avenue of the Americas |
| | New York, NY  10036-6797 |
| | Tel:     (212) 698-3500 |
| | Fax:     (212) 698-3599 |
| | Email: jennifer.insley-pruitt@dechert.com |
| | |
| | *Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

*/s/ Judah Bellin*
Judah Bellin